UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

IN RE: ROBIN G. SHORES and
VALERIE E. SHORES
SSN: XXX-XX-9782
XXX-XX-3765

       Debtors.

v.                                            CASE NO. 3:05-cv-00584-JHM-HTS

COOK SALES, INC.,

       Movant/Appellant,

v.

ROBIN G. SHORES, VALERIE E. SHORES and
MAMIE L. DAVIS Chapter 13 Trustee

       Respondents/Appellees.

_____/

## O R D E R

Before the Court is Appellant's Initial Brief and Argument (Dkt. 5), to which Appellees filed a

Response (Dkt. 10). Appellant is appealing the Bankruptcy Court's Judgment, dated April 18, 2005,

entered pursuant to Findings of Fact and Conclusions of Law of the same date (Dkt. 2, Attachment 2),

that a Portable Warehouse Operating Lease between Appellant and Appellees is a financing

arrangement and not a true lease.

**I.**     **Background**

On June 10, 2003, Appellee Valerie E. Shores, a debtor in this case, executed a document

entitled Portable Warehouse Operating Lease (the "Agreement") of a 12' X 24' portable building,

"lofted-barn" style, serial number L51224E0R000-8208 (Dkt. 5 at 3). Appellant, Cook Sales, Inc., is

identified as the "lessor" and the debtors, or Appellees, are identified as the "lessee". Id. at 4. The

Agreement is for a term of thirty-six months, although the Appellees have the option to terminate at

any time, without further obligation, upon written notice to the Appellant. The Agreement also allows

the Appellees the option to purchase at any time after paying twelve or more monthly lease payments,

provided the Appellees are not in default. Id. at 5.

In March 2004, the Appellees' lease account with Appellant did in fact become delinquent and

in April 2004 the Appellees filed their petition for relief under Chapter 13 of the Bankruptcy Code

(Dkt. 5). The Bankruptcy Code requires the Appellees to either assume or reject unexpired leases and

executory contracts. However, because the Appellees had defaulted on the Agreement here, they could

not assume the lease or contract until they complied with the requirements set out in 11 U.S.C. § 365.[1]

Appellant therefore filed Claim Three in Bankruptcy Court asserting it had a priority in payment in the

instance the Appellees elected to assume the unexpired term of the Agreement (Dkt. 5 at 6).[2]

On September 28, 2004, the Appellees filed an Objection to Appellant's Claim Three

contending it should not receive priority status because the lease agreement was not a true lease but a

disguised financing arrangement (Bankruptcy Dkt. 99, ¶ 5). Appellees also filed a Motion to Value

---

[1] 11 U.S.C. § 365(b)(1) states:

> If there has been a default in an executory contract or unexpired lease of the debtor, the trustee
> may not assume such contract or lease unless, at the time of assumption of such contract or lease,
> the trustee - -
> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default;
> (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a
> party other than the debtor to such contract or lease, for any actual pecuniary loss to such party
> resulting from such default; and
> (C) provides adequate assurance of future performance under such contract or lease.

[2] Appellant's exact language is that it "filed a claim in which it asserted the pre-confirmation
default and its actual pecuniary loss resulting from the default, the 'adequate assurance' required under
the Code, are entitled to priority in payment" if the Appellees assume the unexpired term of the lease
(Dkt. 5 at 6).

Creditor's Claim Three (Bankruptcy Dkt. 25) and Appellant subsequently filed a Motion seeking to Compel Assumption or Rejection of the Personal Property Lease (Bankruptcy Dkt. 55).

To address these various motions, the Bankruptcy Court held a hearing on January 13, 2005. On April 18, 2005, the Bankruptcy Court entered its Findings of Fact and Conclusions of Law (Bankruptcy Dkt. 99) and entered an Order (Bankruptcy Dkt. 100) sustaining the Appellees' Objection to Claim Three and finding the Agreement to be a financing arrangement, granting Appellees' Motion to Value Claim Three and denying the Appellant's Motion to Compel Assumption or Rejection of the Personal Property Lease.

Appellant now argues the Bankruptcy Court erred in holding that the Agreement between the Appellant and Appellees was a financing arrangement and not a true lease. Appellant also contends the Bankruptcy Court erred in denying Appellant's Motion to Compel Assumption or Rejection of the Lease Agreement.

## II.    Standard of Review

This Court is sitting in appellate capacity. It therefore must review the Bankruptcy Court's legal conclusions *de novo* and must accept the Bankruptcy Court's factual findings unless they are clearly erroneous. See, e.g., Nordberg v. Arab Banking Corp., 904 F.2d 588, 593 (11th Cir. 1990); In re Englander, 95 F.3d 1028, 1030 (11th Cir. 1996). "A factual finding is not clearly erroneous unless [the Court], 'after reviewing all of the evidence, [is] left with the definite and firm conviction that a mistake has been committed.'" In re Cox, 338 F.3d 1238, 1241 (11th Cir. 2003)(internal quotation omitted).

Appellant contends that a bankruptcy court's determination of whether an agreement between a debtor and a non-debtor constitutes a lease or financing arrangement subject to the provisions of § 365 of the Bankruptcy Code is reviewed *de novo*. Conversely, Appellees argue such a determination is a

3

mix of law and fact. Neither party provided any support for their assertions.

After researching applicable case law, the Court finds the review of the Bankruptcy Court's determination that the Agreement was not subject to the safe harbor provisions in Florida Statute § 671.201(37) is a question of law and is reviewed *de novo*. However, the Bankruptcy Court's examination of  the entire Agreement and its subsequent determination that the Agreement is a financing arrangement as opposed to a true lease, is a question of fact and is reviewed under the clearly erroneous standard. See Westship, Inc. v. Trident Shipworks, Inc., 247 B.R. 856, 864 (M.D. Fla. 2000); Morris v. Dealers Leasing Inc., (In *re* Beckham), 275 B.R. 598, 605 (D. Kan. 2002), *affirmed*, 2002 U.S. LEXIS 24670 (2002).

## III.    Discussion

## A.    Bankruptcy Court

In an effort to determine whether the Agreement at issue is a financing arrangement[3] or a true lease, the Bankruptcy Court began by examining Florida Statute § 671.201(37). In pertinent part, Florida Statute § 671.201(37), provides:

> Whether a transaction creates a lease or security interest is determined by the facts of each case; however:
>
> (a) A transaction creates a security interest if the consideration the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease not subject to termination by the lessee, and;
> (1) The original term of the lease is equal to or greater than the remaining economic life of the goods;
> (2) The lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods;
> (3) The lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement; or
> (4) The lessee has an option to become the owner of the goods for no additional consideration or

---

[3] The Bankruptcy Court below appears to have used the terms "financing arrangement" and "security interest," interchangeably.

nominal additional consideration upon compliance with the lease agreement.
The Bankruptcy Court found that because the Agreement between the parties was subject to termination by the lessee at any time without further obligation, the Appellees could not rely upon the safe harbor provisions of section 671.201(37). The Bankruptcy Court therefore found it had to examine the entire Agreement prior to making its determination.

The Bankruptcy Court started its analysis of the Agreement by noting that "[i]n determining whether a lease is a 'true' lease, courts have traditionally focused on whether or not the lease contains an option to purchase. If the lease contains an option to purchase for a nominal sum at the end of the lease term, then it is argued that the lessee has been purchasing the item over the term of the lease and, thus, it is a financing arrangement and not a true lease." In re Canaveral Seafoods, Inc., 79 B.R. 57, 58 (Bankr. M.D. Fla. 1987). The Bankruptcy Court found the Agreement provides the Appellees with the option of becoming the owner of the lease for no additional consideration. The Bankruptcy Court also found that despite the Agreement having a long economic life, it allowed the buyer to become the owner in only thirty-six (36) months. Based upon these two factors, the Bankruptcy Court determined the Agreement to be a financing arrangement (Dkt. 2 at 5).

B.    **Appellant's Arguments**

Appellant contends on appeal that the Bankruptcy Court correctly noted that Florida Statute § 671.201(37) controls the determination in this case. However, Appellant argues the Bankruptcy Court erred in its application of section 671.201(37) as the Agreement contains a clause allowing the lessee to terminate the lease without further obligation. Appellant asserts section 671.201(37)(a) creates a security interest "if the consideration the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease not subject to termination by the lessee," and if one

5

or more of the other factors listed in the subsection of section 671.201(37)(a) is also present. Because the Agreement allowed the Appellees to terminate the lease without further obligation, Appellant argues the Bankruptcy Court erred in finding that the Agreement did not constitute a true lease.

Appellant also asserts the case cited by the Bankruptcy Court, In re Canaveral Seafoods, Inc., 79 B.R. at 58, is inapplicable to the case at bar for several reasons. Appellant initially argues that the court in Canaveral Seafoods did not apply Florida Statute § 671.201(37) and instead held that if the lease contained an option to purchase for a nominal sum at the end of the lease term, then the transaction constituted a financing arrangement and not a true lease. Appellant also contends Canaveral Seafoods is inapplicable as the lessor in that case had other lease transactions that either lacked a purchase option provision or contained a provision that required the lessee to pay the full market value for the property. Furthermore, Appellant asserts the disputed lease in Canaveral Seafoods does not appear to allow the lessee to terminate prior to the end of the lease term without further obligation. Consequently, Appellant argues the Bankruptcy Court's reliance on Canaveral Seafoods is misplaced.

Appellant specifically contends that under "present" Florida law, only when a transaction is not terminable by the lessee without further obligation "should the court consider other factors, such as whether there is an option to purchase and the amount of the option price at the end of the lease term relative to the value of the personal property at that time to determine whether a security interest was created." (Dkt. 5 at 14). Appellant contends that the Agreement here expressly allowed the Appellees to terminate the lease without further obligation of rent or payment and thus no security interest was created. Appellant also argues that while the Agreement does contain an option to purchase, its applicability was precluded due to the Appellees having defaulted. Moreover, Appellant provides the Agreement at issue is the only available lease, unlike the various leases transactions mentioned in

6

<u>Canaveral Seafoods</u>. Based upon the above, Appellant argues the Bankruptcy Court erred in not finding the Agreement to be a true lease.[4]

Appellant further contends that the Bankruptcy Court should have looked to and applied the analysis set forth in <u>In re Grubbs Constr. Co.</u>, 319 B.R. 698 (Bankr. M.D. Fla. 2005). In <u>Grubbs</u>, the court found that revised U.C.C. § 1-201(37)(2) provides "a bright line test, which if the conditions are met, establishes that the agreement is *per se* always a security agreement. Under this test, a transaction creates a security interest if. . .[the lease is] not subject to termination by the lessee," and if one of the four provisions in U.C.C. § 1-201(37)(2) is met.[5] <u>Id.</u> at 714. Appellant asserts because the Agreement is subject to termination by the Appellees, the Agreement does not constitute a security interest under <u>Grubbs</u>' bright line test.[6] <u>Id.</u>

Appellant also argues that an examination of the economic realities of the Agreement further underscore that it was a true lease. The economic realities test provides that "'[i]f at the end of the term [of the lease], the only economically sensible course for the lessee is to exercise the option to purchase the property, then the agreement is a security agreement.'" <u>In re Grubbs Constr. Co.</u>, 319 B.R. at 715 (internal citations omitted).[7] Appellant provides the Agreement is a true lease because the parties expected the portable building would retain a significant value, Appellant retained the interest of either

---

[4] Appellant additionally argues that decisions by Bankruptcy Courts within the Eleventh Circuit have found that where a debtor has the right to terminate the obligation to pay by surrendering personal property without further financial obligation, the transaction is a true lease (Dkt. 5 at 13).

[5] U.C.C. § 1-201(37)(2) and Florida Statute § 671.201(37)(a) mirror each other.

[6] Appellant further asserts the Bankruptcy Court ignored the impact of Florida Statute § 671.201(37)(3), which provides a transaction does not create a security interest because of the existence of certain characteristics, such as an option to purchase.

[7] The Court does note that Appellant failed to define the economic realities test and instead only referenced "the economic realities of the transaction" as support for its position.

having a gain or loss at the conclusion of the lease term and because the termination clause allows the Appellees the economic alternative of ending the lease without penalty or consequence.

Lastly, Appellant argues the Agreement at issue has already been reviewed by other bankruptcy courts who found it to be a true lease. See In re Copeland, 238 B.R. 801, 806 (Bankr. E.D. Ark. 1999); In re Harris, Case No. 95-50661 (Bankr. M.D. Ga. 1995)(Dkt. 6); In re McHughes, Case No. Bk. 94-40176 (Bankr. S.D. Ill. 1994)(Dkt. 7). Appellant therefore contends the Bankruptcy Court's finding that the Agreement is not a true lease, denying Appellant's Motion to Compel Assumption or Rejection of the Personal Property Lease and granting Appellees' objection to Appellant's claim is erroneous and should be reversed.

## C.      Appellees' Arguments

Appellees filed a response arguing that Appellant was attempting to twist the safe harbor provisions for a financing arrangement in Florida Statute § 671.201(37) into safe harbor provisions for a lease. Appellees contend Appellant's argument is in effect one requiring that any agreement terminable at will be automatically treated as a true lease. Appellees assert such a contention is not provided for in the Uniform Commercial Code and is not a reasonable interpretation of Florida case law.[8] Consequently, Appellees argue Appellant's contention is without merit.

Appellees also note that while Appellant attempts to rely upon the bright line test articulated in In re Grubbs Constr. Co., 319 B.R. at 715, the Grubbs court actually found, using the economic

---

[8] Appellees provide that non-recourse financing agreements are always terminable at will. Appellees contend that applying Appellant's argument that terminable at will agreements should automatically be treated as leases would necessitate converting all non-recourse financing agreements into leases. Appellees also assert that the Florida Legislature had the opportunity to provide that all leases terminable at will would automatically be a lease, not a security agreement. However, Appellees argue the Legislature only applied that to consumer rental purchase agreements, and then only if they meet certain requirements (Dkt. 10 at 7)(citing Florida Statute §§ 559.9231-559.9241).

realities test, that the transactions and leases involved were financing arrangements. Appellees further assert that the Bankruptcy Court's reference of <u>Canaveral Seafoods</u>, 79 B.R. at 58, is applicable as the deciding factor of whether the agreement in that case was a lease or a financing arrangement was the availability of the purchase option. The debtor in <u>Canaveral Seafoods</u> had the option to purchase the equipment for $1.00 and the court thus found the agreement to be a financing arrangement. Appellees contend the Bankruptcy Court's use of <u>Canaveral Seafoods</u> was thus appropriate.

Finally, Appellees argue the Bankruptcy Court reviewed the actual facts and circumstances of the case and determined that because "the collateral had a lifetime far exceeding the lease term and because the lessee became the owner for no additional consideration at the end of the lease, the effect of this transaction was the same as a financing arrangement." (Dkt. 10 at 8). Appellees therefore contend the Bankruptcy Court's finding should be affirmed.

## IV. Analysis

The Court has carefully considered the record on appeal and the briefs of the parties and concludes that the Bankruptcy Court was clearly erroneous in determining that the Agreement was a financing arrangement and not a true lease. The decision of the Bankruptcy Court is therefore reversed.[9]

In determining that the Agreement is in fact a true lease, the Court finds the decisions of the bankruptcy courts in <u>In re McHughes</u>, Bk. Case No. 94-40176 (Dkt. 7) and <u>In re Copeland</u>, 238 B.R. at 801, instructive.[10] In both <u>Copeland</u> and <u>McHughes</u>, the bankruptcy courts examined agreements which

---

[9] The Court does find the Bankruptcy Court's determination as to the inapplicability of the safe harbor provisions in Florida Statute § 671.201(37) to be proper.

[10] Another case apparently finding the Cook Sales, Inc., agreement to be a true lease is <u>In re Harris</u>, Case No. 95-50661 (Dkt. 6). However, the <u>Harris</u> court failed to provide any substantive evaluation and only stated the agreement constituted a true lease (Dkt. 6 at 1).

are almost identical, if not entirely identical, to the Agreement at issue here. Both bankruptcy courts found the agreement to be a true lease.

The bankruptcy court in <u>McHughes</u> began by noting that the ability of the lessee to terminate the agreement at anytime precluded the safe harbor provision in U.C.C. § 1-201(37) from applying. The bankruptcy court provided that the agreement did contain an option to purchase for nominal consideration, which other courts have consistently held "indicates the transaction should be treated as [a] security agreement[]." (Dkt. 7 at 5)(citing <u>In re Marhoefer Packing Co., Inc.</u>, 674 F.2d 1139 (7th Cir. 1982)). However, the bankruptcy court continued that "'where the lessee has the right to terminate the transaction, it is not a conditional sale.'" <u>Id.</u> (quoting <u>In re Marhoefer Packing</u>, 674 F.2d at 1143). <u>See</u> <u>In re Powers</u>, 983 F.2d 88, 91 (7th Cir. 1993)(concluding that "even though the lessee can acquire the goods at the end of the lease's term, the lessee is under no obligation to make the payments that will allow him to exercise the option."). Applying the conclusions in <u>Marhoefer Packing</u> and <u>In re Powers</u> to the agreement at issue, the bankruptcy court in <u>McHughes</u> similarly noted that "the inclusion of an option to purchase the warehouse for nominal consideration does not indicate that the lease is a security agreement where the lessee also has the right to terminate the lease at any time with no further obligation to the lessor." (Dkt. 7 at 6). The bankruptcy court also examined whether the useful life of the property exceeded the length of the term of the agreement (Dkt. 7 at 7). The bankruptcy court found that because the useful life of the property, approximately twenty-five to thirty-five years, did exceed the term of the lease, thirty-six months, the transaction is in effect a true lease. <u>Id.</u> at 7 (citing <u>In re Marhoefer</u>, 674 F.2d at 1145).[11]

---

[11] The bankruptcy court in <u>McHughes</u> also examined whether the amount of rent exceeded the fair market value of the property. However, the bankruptcy court found amendments to U.C.C. § 1-201(37) curtailed the importance of this factor. The bankruptcy court also found that depending upon when the debtors exercise the option to purchase, as the agreement allows the debtors to purchase at the

Furthermore, the bankruptcy court in <u>Copeland</u>, after reviewing the findings of the <u>McHughes</u>' court, decided to undertake a different analysis in finding the agreement to be a true lease. 238 B.R. at 804. The bankruptcy court in <u>Copeland</u> began by articulating various reasons the agreement could be viewed as a sale. One of the key reasons was that the lessee, at the conclusion of the lease, could purchase the property for the nominal sum of $1.00. This provision was noteworthy to the bankruptcy court as it proceeded to articulate that "[t]he most significant factor in determining whether a transaction is a lease or a sale and security interest is whether the lessor has retained a meaningful residual interest in the goods at the end of the lease term." <u>Id.</u> (internal citations omitted). The bankruptcy court provided that under its interpretation of the residual value test, at the end of the lease term, "Cook cannot reasonably expect to receive back anything of value since a lessee in all likelihood would exercise the option to own the property for only $1.00." <u>Id.</u> at 805. Despite this finding, the bankruptcy court determined the lease to be a true lease due to the lessee's ability  to terminate the lease at any time. <u>Id.</u> at 806 (noting that even though the current version of U.C.C. § 2-102(37) "does not require a finding as a matter of law that a transaction is a true lease based only on the fact that the lessee may terminate the lease at any time," under Arkansas law, this single fact precludes the finding the transaction was a sale)(citing <u>Crumley v. Berry</u>, 766 S.W. 2d 7, 8 (1989)).

Based upon the foregoing, the Court finds the Agreement at issue to be a true lease. Indeed, the Agreement expressly states "[t]he Lessee may terminate this lease at any time by written notice to Lessor and Lessee shall have no obligation to Lessor subsequent to the date of the notice except for liability for damage to the leased property during the lease term." (Dkt. 12 at ¶6). The ability of the lessee to terminate the lease does bolster the finding that the Agreement is a true lease. Also of import

---

end of twelve months, the rent may or may not exceed the purchase price (Dkt. 7 at 9).

is the fact that the useful life of the warehouse well exceeds the term of the lease. See In re McHughes, Case No. Bk. 94-40176 (Dkt 7)(noting that "[w]hen the useful life of the property exceeds the terms of the lease, the transaction is in effect a true lease.")(citing In re Marhoefer, 674 F.2d at 1145) (internal citations omitted). The McHughes and Copeland decisions provide further support to this finding. Also noteworthy is that the Agreement states that the lessee acquires no ownership rights or equity in the portable warehouse during the term of the lease, the lessee agrees to keep the portable building at the location described in the Agreement and will allow unimpeded access to it at all times, the lessee cannot alter it with the construction of shelving, addition of equipment and accessories or placing of signs thereon, the lessee is prohibited from affixing the portable building to any real estate "in such a manner that the same cannot be detached quickly and without undue effort," and that the lessee is prohibited from removing insignia from the portable building showing ownership in the Appellant (Dkt. 12 at ¶9).  For all of these reasons, the Court finds the Agreement to be a true lease.

Accordingly, upon due consideration, it is hereby **ORDERED**:

1.      The Bankruptcy Court's Judgment dated April 18, 2005, is **REVERSED**.

2.      The issue of whether Appellees must assume the lease and provide adequate assurances or reject the lease and surrender possession is hereby **REMANDED** to the Bankruptcy Court.

3.      The Clerk is directed to transmit a certified copy of this Order to the clerk of the bankruptcy court.

        **DONE AND ORDERED** at Jacksonville, Florida, this __19____ day of October 2005.

copies:
The Honorable George L. Proctor,
United States Bankruptcy Judge

JOHN H. MOORE II
United States District Judge

12

Counsel of record